IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

   Plaintiff,

VS.               No.  09-20152-JPM-cgc

CEDRIC SMITH-HODGES,

   Defendant.

---

**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS**

---

  Before the Court by way of Order of Reference (D.E. # 56) from Chief District Judge McCalla for report and recommendation is Defendant Cedric Smith-Hodges' Motion to Suppress all evidence of and testimony relating to alleged pretrial identifications of him by government witnesses and/or those familiar with the defendant, any previous in-court identifications, and any attempted in-court identifications by those witnesses with respect to the crime alleged in the instant Indictment. (D.E. # 55)  A suppression hearing was held in this case on April 22, 2010[1]. Present at the hearing were Special Assistant U.S. Attorney Corliss Shaw, Defendant Smith-Hodges, and his attorney, Randolph W. Alden.  At the hearing, the court heard testimony from Memphis Police Department Officer Roger Dale Pike and from Brandon Dale Loggins, the alleged victim[2].

  Based upon the briefs filed in support of and in opposition to the motion, the evidence

---

[1] The suppression hearing was originally scheduled for April 1, 2010.  The hearing was continued to April 22 to accommodate the attorneys' scheduling conflicts.

[2] The transcript of the hearing was submitted to the court on July 9, 2010.  The parties filed post hearing briefs on July 7 and July 21, 2010.

presented at the hearing, and the entire record, the court submits the following proposed findings of fact and conclusions of law and recommends that the Motion to Suppress be denied.

**A.  Proposed findings of fact**

The court accepts as credible the testimony of Officer Pike and Mr. Loggins[3] and proposes the following findings of fact based on their testimony.

The events relevant to this Motion occurred in the early morning hours of February 17, 2009.  Mr. Loggins and his girlfriend exited the Hughes Nightclub located on Thomas at Firestone. Mr. Loggins' car was parked on a back street.  As he began to unlock his car, Mr. Loggins was approached by two men with guns who demanded everything that he had in his pockets.  Mr. Loggins testified that there was enough light for him to see what was going on. One individual held a shotgun a couple of feet from Mr. Loggins' face while he emptied his pockets.  Mr. Loggins described the individual with the gun pointed at him as dark-skinned with braids in his hair and wearing a black fleece hoodie.  Mr. Loggins described the second gunman as being a little shorter than the first gunman with a similar skin complexion and braids in his hair as well.

After he complied with their demand, Mr. Loggins was told to lie down on the sidewalk and that if he moved he would be shot.  The men turned to Mr. Loggins' girlfriend and demanded that she give them whatever she had.  After the men were done with the girlfriend, they got into a silver Mercedes that was parked behind Mr. Loggins' car and drove off.  Mr. Loggins described the driver of the Mercedes as dark-skinned and bald.  The encounter lasted approximately two minutes.

---

[3] The court notes that at the time of the hearing, Mr. Loggins was in custody at the Shelby County Jail on a bench warrant related to an underlying charge of possession with intent to distribute.

After the suspects left, the couple got in their car and followed the suspects. As soon as they drove off, Mr. Loggins called 911. The couple was blocked by traffic from other exiting club goers and was separated from the suspects by two cars. Mr. Loggins saw one of the suspects jump from the Mercedes into a Jeep Cherokee. Mr. Loggins then followed both the Mercedes and the Jeep north on Thomas towards Frayser. While following the suspects, Mr. Loggins called 911 to report the robbery. During the call, the 911 dispatcher told Mr. Loggins not to continue to chase the suspects. When Mr. Loggins was instructed to stop following the suspects, he complied and went to his home in the Frayser area. Approximately five minutes after arriving at home, Mr. Loggins received a call from the police dispatcher asking him to meet police officers at the Mapco located at Chelsea and Hollywood.

Officer Pike was riding in a two-man patrol unit with Officer Brandon Hadley when they received a dispatch call about an armed robbery that occurred at the Hughes Nightclub at Thomas and Firestone. The officers were informed that the victims were a male and female and that they were following the suspects who were described as three African American males in a Jeep Cherokee and a Mercedes. As the officers entered the intersection at Hollywood and Chelsea, Officer Pike saw two vehicles matching the description of the suspect vehicles in the parking lot of a Mapco service station. The officers pulled into the Mapco and approached the vehicles. Officer Pike testified that Mr. Smith-Hodges was seated in the back of the Mercedes, that a second subject was standing next to the Mercedes and that a third subject was standing at a payment window. Officer Pike apprehended the subject at the window while Officer Hadley interacted with the two subjects at the Mercedes. After other officers arrived as backup, Mr. Smith-Hodges and another suspect were placed in the back of one squad car. Officer Pike testified that approximately five minutes after the suspects were detained, the victims arrived at

the scene.

Approximately fifteen to twenty minutes after receiving the call from the dispatcher, Mr. Loggins arrived at the Mapco.  Officer Pike described the car that Mr. Loggins came in as arriving in a hurry and that Mr. Loggins ran up to the scene where the officers were.  Officer Pike testified that Mr. Loggins spontaneously stated that the individual standing beside the Mercedes was one of the individuals that robbed him.  Mr. Loggins testified that at the scene the officers asked if he could identify the suspects. He was shown three black males, two in one police car and one in another.  Mr. Loggins identified the individual that was alone in one of the police cars as the driver of the Mercedes. Mr. Loggins identified the two individuals sitting together in the other police car as the gunmen.  As he saw the individuals, Mr. Loggins identified which one had the shotgun and which one had the pistol.  Both Officer Pike and Mr. Loggins testified that the Mapco was well lit.  Mr. Loggins testified that he had no difficulty remembering what the individuals that robbed him looked like.  Officer Pike testified that Mr. Loggins did not hesitate in making his identification of the suspects as the ones that robbed him.  At the scene, Mr. Loggins identified Mr. Smith-Hodges as one of the individuals with a weapon.  After Mr. Loggins made the positive identification of Mr. Smith-Hodges and the other suspects, the suspects were arrested.  Weapons were recovered that specifically matched up to the weapons that Mr. Loggins reported the suspects were carrying.

**B. Proposed Conclusions of Law**

In assessing the validity of a pretrial identification, courts follow a two-step analysis. First, the court must determine whether the procedure was unduly suggestive. *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986). The defendant bears the burden of proving this element. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

If the court finds that the procedure was unduly suggestive, it then must determine whether based on the totality of the circumstances the identification is nevertheless reliable. *Ledbetter v. Edwards*, 35 F.3d 1062, 1071 (6th Cir.1994). In order to determine whether the eyewitness identification is reliable, the court examines whether the witness had an opportunity to "view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382-83, 34 L.Ed.2d 401 (1972). Once there is no "substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given the identification." *McNary v. Sowders*, 660 F.2d 703, 709 (6th Cir. 1981) (quoting *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979)).

The court first concludes that the show-up was not unduly suggestive. Prompt, on-scene show-ups are not impermissible or unduly suggestive. *U.S. v. Craig,* 198 Fed.Appx. 459, 466 (6th Cir. 2006) [4] (victim made her identification of the defendant within twenty minutes after his arrest). Mr. Loggins arrived at the Mapco to make the identification less than thirty minutes after the encounter. The identification was made after Mr. Loggins followed the two suspect vehicles

---

[4] Citing with approval cases from other districts and circuits for the proposition that prompt, on-scene show-ups of suspects to witnesses are not impermissible or unduly suggestive.

while describing the vehicles to the police. When Mr. Loggins approached the vehicles, he spontaneously stated that the individuals were the ones that robbed him prior to the police asking him to make an identification.

Even if the show-up was unduly suggestive, the court concludes that the witness identification is reliable. Beginning with Mr. Loggins' opportunity to "view the criminal at the time of the crime [and his] degree of attention," Mr. Loggins testified that he was able to see the suspects clearly at the time of the robbery and knew which individual was wielding the pistol and which had the shotgun. On cross-examination, Mr. Loggins was challenged with regard to whether he was so focused on the firearms that he was not paying attention to the faces of the robbers. However, he testified that he looked the gunmen in the face during the two minute encounter and that he was never unsure of the identification.

With regard to the remaining three factors – "the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation" – both Officer Pike and Mr. Loggins testified that Mr. Loggins was certain about the identification of Mr. Smith-Hodges and the other suspects. Officer Pike testified that Mr. Loggins was not uncertain about the identification and that he did not hesitate in his identification. Mr. Loggins testified that he identified each of the gunmen and the driver of the Mercedes. Further, Mr. Loggins described the two suspect vehicles to the dispatcher and that accurate description lead police to the two vehicles at the Mapco. Reviewing the testimony of Mr. Loggins and Officer Pike, approximately less than thirty minutes elapsed between the encounter and the identification.

Viewing the totality of the circumstances in this case, the court finds that the identification is reliable and that there is no basis to suppress testimony regarding the on-scene

6

identification or an in-court identification.

**C.  Recommendation**

    For the reasons stated above, it is recommended that the motion to suppress be denied.

    Signed this 15th day of November, 2010.

                                                   s/ Charmiane G. Claxton
                                                   CHARMIANE G. CLAXTON
                                                   UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE SAID OBJECTIONS OR EXCEPTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**