### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀) | Case No. 2:09-cr-20152-JPM |
| v.⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀) | |
| CEDRIC SMITH-HODGES,⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀Defendant.⠀⠀⠀⠀) | |

### ORDER DENYING DEFENDANT'S MOTION TO MODIFY THE TERMS OF HIS SUPERVISED RELEASE AND HOLDING IN ABEYANCE RULING ON DEFENDANT'S MOTION TO DISMISS VIOLATIONS 5 AND 6

This cause is before the Court on Defendant Cedric Smith-Hodges's (hereinafter "Defendant" or "Smith-Hodges") February 12, 2020 Oral Motion to Dismiss Violations 5 and 6 of the Petition and the accompanying March 6, 2020 Memorandum of Law in Support of Defendant's Motion to Dismiss Supervised Release Violations and Motion to Modify the Conditions of his Supervised Release. (ECF No. 233.) Defendant moves the Court to dismiss Violations 5 and 6 of the Supervised Release Petition because the special condition of his supervised release requiring him to register as a sex offender under the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act (hereinafter the "Tennessee Sex Offender Registration Act"), Tenn. Code Ann. § 40-39-201, *et seq.*, violates the *Ex Post Facto* Clause of the United States Constitution. (Id. at PageID 854.) Defendant also moves the Court to modify the terms of his supervised release on grounds that his waiver of a

modification hearing was not knowingly, intelligently and voluntarily made.  (Id. at PageID 870–71.)

The United States of America (hereinafter "the Government") filed its Response to the Motion on March 24, 2020.  (ECF No. 238.)  First, the Government argues that Defendant's challenges are not ripe because Violations 5 and 6, which allege that Defendant failed to submit to a polygraph examination and that he failed to keep counseling appointments as required by the terms of his supervised release, do not implicate the Tennessee Sex Offender Registration Act.  (Id. at PageID 939.)  The Government further argues that these restrictions "seem reasonable regardless of his status with the State of Tennessee sex offender registry given his multiple convictions for [i]ndecent [e]xposure and incidents of sexual misconduct."  (Id. at PageID 939–40.)  The Government also argues that if the Court "places the Defendant back on supervised release, the Court should re-impose all conditions of supervised release."  (Id. at PageID 940.)  Finally, the Government asserts that if Defendant believes that the "Tennessee sex offender statute violates his rights every day that he is required to register," then he should "directly attack" the law as the plaintiffs did in Does #1-5 v. Snyder, 834 F.3d 696 (6th Cir. 2016), the case that forms the basis for Defendant's Motion.  (Id.)

For the reasons set forth below, the Motion to Modify the Terms of Defendant's Supervised Release is **DENIED**.  The Court reserves ruling on the Motion to Dismiss Violations 5 and 6 until after holding an evidentiary hearing.

I.      **BACKGROUND**

On April 28, 2009, a grand jury in the Western District of Tennessee indicted Defendant Cedric Smith-Hodges on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  (ECF No. 1.)  On July 6, 2011, Defendant pled guilty to count one of the

Indictment.  (ECF Nos. 126, 128.)  The Court sentenced defendant to 188 months of

imprisonment and 4 years of supervised release.  (Judgment, ECF No. 152.)  Per the conditions

of his supervised release, Defendant was required to receive treatment for his "post traumatic

syndrome, schizophrenia, and attention deficit disorder as directed by the Probation Officer."

(Id. at PageID 401.)  On September 21, 2015, the Court granted Defendant's § 2255 motion and

vacated the judgment.  (ECF No. 165.)  Defendant was resentenced to 120 months of

imprisonment and 3 years of supervised release.  (ECF No. 172.)

On April 8, 2019, the United States Probation Office petitioned the Court to modify the

terms of Defendant's supervised release to add several special conditions.  (ECF No. 209.)

These conditions included the requirements that Defendant submit to polygraph examinations

when directed by the Probation Office, that Defendant "submit to an assessment for possible sex

offender treatment," that Defendant "complete and comply with the sex offender registration

requirements, sex offender treatment conditions, polygraph examination condition, and . . .

follow the specific instructions of the probation offer in regard to these requirements," and that

Defendant "not directly or indirectly have any unsupervised contact with any child under the age

of 18."  (Id. at PageID 673.)  Defendant signed and executed a form entitled "Waiver of Hearing

to Modify Conditions of Probation/Supervised Release" on April 8, 2019.  (ECF No. 209-1.)

On November 14, 2019, the United States Probation Office requested the Court issue a

warrant for Defendant's arrest.  (ECF No. 210.)  The Court granted the request.  (ECF No. 212.)

An arrest warrant was issued on November 14, 2019.  (ECF No. 212.)  Probation and the

Government allege that Defendant committed seven violations of his supervised release.  (ECF

No. 210 at PageID 676–77.)  These include: (1) that Defendant failed to submit monthly

supervision reports as was required by the terms of his release; (2) that Defendant failed on

multiple occasions to comply with his probation officer's requirement that he report any

"attempted home contact"; (3) that Defendant failed to inform Probation of his change of

address; (4) that Defendant has not regularly worked since June 17, 2019, and did not report his

change in employment status to Probation; (5) that Defendant "failed to submit to polygraph

examinations on September 25, 2019, and September 26, 2019," as was required by the modified

conditions of his supervised release; (6) that Defendant failed to "complete and comply with sex

offender registration requirements, sex offender treatment conditions, . . . and [the requirement

that he] shall follow the specific instructions of the probation officer" when Defendant failed to

keep counseling appointments as directed by Probation; and (7) that on March 20, 2019

Defendant purchased or possessed marijuana.  (Id.)

On February 12, 2020, the Court held a supervised release violation hearing.  (ECF No.

226.)  The Government dismissed the seventh alleged violation, and Defendant pled guilty to

violations one and four.  (Id.)  Defendant contested violations two and three.  (Id.)  Additionally,

Defendant indicated that he would be raising constitutional objections to the sex offender

registration requirement and the special supervised release conditions imposed by the April 8,

2019 modification that serve as the basis for violations five and six.  (Id.)  Defendant filed a

memorandum in support of his Motion to Dismiss Violations Five and Six and to Modify the

Terms of his Supervision on March 6, 2020.  (ECF No. 233.)  The Government filed its response

on March 24, 2020.  (ECF No. 238.)

II.     ANALYSIS

A.     Constitutional Challenge to Sex Offender Registration Term

The Court lacks jurisdiction to entertain Defendant's challenge to the constitutionality of

the special supervised release conditions imposed by the April 8, 2019 modification.  United

States v. Faber, 950 F.3d 356, 358–59 (6th Cir. 2020).  Section 3583(e)(2) permits a court to

"modify, reduce, or enlarge the conditions of supervised release, at any time prior to the

expiration or termination of the term of supervised release" so long as it is permitted by Federal

Rule of Criminal Procedure 32.1(c).  In making its determination, courts are guided by the

factors set forth in § 3553(a)(1), (2)(B)–(D), (a)(5), (a)(6), and (a)(7) in determining whether to

modify the challenged terms.  18 U.S.C. § 3583(e)(2); 18 U.S.C. 3553(a)(1), (2)(B)–(D), (a)(5),

(a)(6), (a)(7).  The "illegality of the condition," which includes constitutional challenges, is not

included among the factors that courts consider in determining whether modification is

appropriate.  Faber, 950 F.3d at 358.

        The Sixth Circuit in United States v. Faber recently held that district courts do not have

jurisdiction to entertain defendants' challenges to the constitutionality of a special condition of

supervised release by way of a § 3583(e)(2) motion.  Id. at 358–59.  "Section 3583(e)(2) allows

district courts to adjust supervised release conditions to account for new or unforeseen

circumstances.  It is not, however, a duplicate path for postconviction review."  Id. at 359.

Allowing such challenges would read into § 3553(a) an additional factor that would require

consideration of whether the conditions of supervised release are unconstitutional, and such a

result "would disregard the plain text of the statute and frustrate Congress's intent to encourage

timely challenges."  Id. at 358 (citing United States v. Gross, 307 F.3d 1043, 1044 (9th Cir.

2002)).  Defendant's ex post facto and due process challenges to the special conditions of his

supervised release, which include the requirement that Defendant register as a sex offender under

the Tennessee Sex Offender Registration Act, must therefore be dismissed.[1]

---

[1] This holding does not prevent a defendant from challenging the terms of his supervised release as unconstitutional.
Defendant may challenge these modifications under Federal Rule of Criminal Procedure 35(a) and by filing a § 2255
motion.  See Faber, 950 F.3d at 358.  A Rule 25(a) Motion, however, must be filed within fourteen days of the

**B.      Voluntariness of Defendant's Waiver of his Right to a Modification Hearing**

Defendant argues that he did not knowingly and voluntarily waive his right to a

modification hearing when he signed the waiver document on March 20, 2019, and that the

waiver was invalid because he was not informed of his right to counsel or his right to a

modification hearing before he signed the document.  (ECF No. 233 at PageID 870–72.)

Defendant argues that the documentation he signed upon release from prison was "without the

requisite consultation with a health provider to access his mental health, treatment [and/or]

medication,"[2] and that shortly thereafter, he signed the waiver of his challenge to the

modification of the terms of his supervised release "without being advised of his right to counsel

and to a hearing" and "without any referral for mental health treatment or consultation . . . ."  (Id.

at PageID 870.)

Federal Rule of Criminal Procedure 32.1(c) provides defendants with certain procedural

safeguards in connection with modifications to the terms of the defendant's supervised release.

The Rule provides, "Before modifying the conditions of probation or supervised release, the

court must hold a hearing, at which the person has the right to counsel and an opportunity to

make a statement and present any information in mitigation."  Fed. R. Crim. P. 32.1(c)(1).  There

are exceptions to this hearing requirement, including if (1) "the person waives the hearing" or (2)

"the relief sought is favorable to the person and does not extend the term of probation or of

supervised release . . . and . . . an attorney for the government has received notice of the relief

---

imposition of the sentence, or in this case fourteen days after the Court modified the terms of Defendant's
supervised release.  See Fed. R. Crim. P. 35(a).
[2] Defendant provides no case law supporting his argument that a defendant must be allowed to consult with a mental
health provider before signing a waiver document for that waiver to be effective.  Federal Rule of Criminal
Procedure 32.1(c) provides no such right, nor does the United States Constitution.

sought, has had a reasonable opportunity to object, and has not done so." Fed. R. Crim. P.

32.1(c)(2)(A)–(C).

       1.      *Jurisdiction to Hear Defendant's Challenge to the Validity of his Waiver*

Before addressing the merits of Defendant's argument, the Court finds that the holding of

United States v. Faber does not strip the Court of jurisdiction to hear Defendant's constitutional

challenge to the validity of a Rule 32.1(c) waiver. Such a challenge is a procedural challenge

rather than a challenge to the "illegality of the condition." Faber, 950 F.3d at 358.

       2.      *Pre-Modification Hearing Right to Counsel*

A plain reading of Rule 32.1 does not support the conclusion that the Rule confers a right

to counsel *before* a modification hearing is held. Rule 32.1(c) requires that a hearing be held

before modification of the terms of the defendant's supervised release "*at which* the person has

the right to counsel . . . ." The Rule makes no mention of the right to counsel before a waiver

document is presented to the defendant. The 2002 Amendment to the rule changed the language

of Rule 32.1(c) from "[a] hearing and assistance of counsel are required before the terms or

conditions of probation supervised release can be modified" to the current language providing a

hearing "at which the person has the right to counsel. See Latson v. United States, 68 F. App'x

544, 551 (6th Cir. 2003). Such a change reflects the drafters' intent to clarify that a right to

counsel does not attach *until* the Court holds a modification hearing.

In addition, the few courts to have addressed the question of whether pre-waiver counsel

is constitutionally required or required under Rule 32.1(c) have all answered no. The Sixth

Circuit dealt with the issue in an unpublished opinion in Latson v. United States. The facts in

that case are analogous to Defendant's case: Latson met with his probation officer, who

presented Latson with a "Waiver of Hearing to Modify Conditions of Probation" form, which

Latson proceeded to sign.  Id. at 545.  The court agreed with the Ninth Circuit's decision in

United States v. Stocks, 104 F.3d 308 (9th Cir. 1997), and held that "[n]othing in case law,

statutes or rules support[ed]" the defendant's contention that "a waiver of counsel without the

assistance of counsel (or a hearing before a judge) is not valid, and waiver of a hearing, without a

hearing (or assistance of counsel) on that waiver is not valid."  Latson, 68 F. App'x at 552.  The

Sixth Circuit stated that revocation proceedings are "not part of a criminal prosecution and thus

the full panoply of due process protections accorded the defendant in such a proceeding do not

apply to a revocation proceeding."  Id. (quoting United States v. Dodson, 25 F.3d 385, 388 (6th

Cir. 1994)) (internal quotation marks omitted).  The Ninth Circuit's opinion in Stocks (which the

Sixth Circuit relied on) similarly found that "[n]othing in the Constitution or any Statute or rule

requires" that "before waiving counsel at a hearing [the defendant] must have counsel to advise

him whether such a waiver is in his interest."  104 F.3d at 312.

    The few district courts to have dealt with the issue have also agreed that no such right

exists or is required by Rule 32.1(c).  See United States v. Jones, 957 F. Supp. 1088, 1093 (E.D.

Ark. 1997), abrogated on other grounds by United States v. Ahlemeier, 391 F.3d 915, 923–24

(8th Cir. 2004) ("[T]he Court of Appeals for the Ninth Circuit [in Stocks] held that the [32.1(c)]

right to counsel is limited to presence and assistance of counsel if the right to a hearing is

invoked. The Court finds that analysis persuasive."); see also United States v. Wright, No. 11-

40024-01-DDC, 2019 WL 3219335, at *4 (D. Kan. July 17, 2019) (agreeing with the Sixth and

Ninth Circuits that the Fifth and Sixth Amendments do not require a "right to consult with an

attorney before signing the waiver" of a modification hearing).  The Court agrees with the Sixth

Circuit's analysis in Latson and the cases from other circuit and district courts that have found

that neither the Federal Rules of Criminal Procedure nor the United States Constitution affords

defendants a right to counsel before agreeing to waive their right to a modification hearing.

Defendant, therefore, had no right to counsel at the time he waived his right to a hearing.

Because the right to counsel in the context of a Rule 32.1(c) hearing does not attach until

the modification hearing itself, the probation officer was not required to provide a Miranda-

equivalent warning as Defendant suggests in his memorandum.  (See ECF No. 233 at PageID

870 ("without being advised of his right to counsel and to a hearing . . .").)  No Sixth Circuit case

has addressed whether an individual must be provided a procedural safeguard akin to the

Miranda warnings when presented with a written waiver of his right to a modification hearing.

No such constitutional requirement exists for several reasons.  First, "[T]he Constitution requires

that the full Miranda warnings only be given prior to custodial interrogation."  United States v.

Myers, 123 F.3d 350, 359 (6th Cir. 1997) (citing United States v. Washington, 431 U.S. 181, 187

n.5 (1977)).  The procedural safeguards of Miranda were designed to counteract the coercive

pressure faced by a defendant during a custodial interrogation by ensuring that the individual was

provided counsel.  See Roberts v. United States, 445 U.S. 552, 560–61 (1980); see also

Washington, 431 U.S. at 187 n.5.  A probation officer's meeting with an individual on

supervised release, the setting in which most defendants (Smith-Hodges included) waive their

right to a modification hearing, is not so coercive as to rise to the level of police coercion present

during a custodial interrogation, thus triggering the right to Miranda warnings.  Such a meeting

does not present a "setting in which [the defendant's] freedom of action is curtailed in any

significant way from being compelled to incriminate themselves."  Miranda v. Arizona, 384 U.S.

436, 467 (1966).

Second, defendants on supervised release are not afforded the same safeguards as those

afforded defendants facing a criminal prosecution.  Dodson, 25 F.3d at 388.  The revocation of

supervised release is not a criminal proceeding and therefore does not necessarily implicate the

Fifth Amendment's right against self-incrimination.  See Minnesota v. Murphy, 465 U.S. 420,

435 (1984) ("Although a [probation] revocation proceeding must comport with the requirements

of due process, it is not a criminal proceeding."); see also United States v. Riley, 920 F.3d 200,

206 (4th Cir. 2019) ("[L]ike parole and probation revocation proceedings, 'supervised release

revocation hearings are not criminal proceedings.'" (quoting United States v. Tippens, 39 F.3d

88, 89 (5th Cir. 1994))); but see United States v. Poindexter, 444 F. App'x 580, 582 (3d Cir.

2011) ("While supervised release, probation, and parole are not stages of criminal prosecution,

they result in a loss of liberty; therefore, minimum requirements of due process are required.").

The need for providing the Miranda warnings, that is, the need to protect individual's

constitutional right against self-incrimination, is not as significant in the supervised release

context, given that a violation of the terms of one's supervised release does not necessarily lead

to criminal penalties.  See Riley, 920 F.3d at 207 (statements made to a probation officer while

on supervised release did not qualify as self-incriminating because they were not made during a

criminal proceeding).  Although there are some instances in which the right against self-

incrimination is implicated by a probation officer's questioning of a defendant on supervised

release, see United States v. Von Behren, 822 F.3d 1139, 1150 (10th Cir. 2016) (finding that

threat of imprisonment and revocation for refusing to answer questions in a probation-mandated

polygraph violated right against self-incrimination), a probation officer's request that a defendant

waive his right to a modification hearing does not involve the threat of future criminal

prosecution or the revocation of a defendant's supervised release.  At least in the context of the

waiver of a modification hearing, the Fifth Amendment right against self-incrimination is not

implicated, making Miranda warnings constitutionally unnecessary.

> 3.       *The Validity of Defendant's Executed and Signed Waiver Form*

Although defendants are not entitled to the advice of counsel or a <u>Miranda</u>-style warning

at the time they agree to waive their Rule 32.1(c) right to a modification hearing, the defendant's

waiver must still be knowing, intelligent, and voluntary to comport with due process. <u>See</u> <u>United</u>

<u>States v. Williams</u>, 321 F. App'x 486, 489–90 (6th Cir. 2009).  In order to be knowing and

voluntary, courts look to the totality of the circumstances.  <u>United States v. Melton</u>, 782 F.3d

306, 311 (6th Cir. 2015).  Although the Sixth Circuit has not addressed the applicable standard

governing such waivers in the context of a Rule 32.1(c) modification hearing, the Court applies

the same standards set forth in the context of waivers of Rule 32.1(b) violation hearings.  A full

Rule 11 colloquy is not required in the supervised release context, but courts must still consider

several factors to determine whether the waiver was voluntarily, knowingly and intelligently

made.  <u>See</u> <u>id.</u>; <u>see also</u> <u>United States v. Dodson</u>, 25 F.3d 385, 388 (6th Cir. 1994).  Among the

facts to consider are (1) whether the accused was apprised of the consequences of waiving his

right to a hearing, (2) his understanding of the possible consequences of the modification, and (3)

his comprehension of the modifications to the terms of his supervised release.  <u>See</u> <u>Melton</u>, 782

F.3d at 311.  No explicit direction has been given as to who bears the burden of proving that the

waiver was knowing and voluntary, but the Court adopts the general rule in the context of

waivers of constitutional rights and finds that the Government bears the burden of proving by a

preponderance of the evidence that the waiver of the right to a modification hearing was

knowing and voluntary.  <u>See</u> <u>United States v. Gilmore</u>, No. 3:09–CR–27, 2009 WL 7063098, at

\*4 (E.D. Tenn. Nov. 25, 2009) (citing <u>Connelly</u>, 479 U.S. at 169–70).

Although the burden of proving that a waiver of a right to a modification hearing always

rests with the Government, the existence of a written waiver signed and executed by the

11

defendant is *prima facie* evidence that the defendant knowingly and voluntarily waived his right to a modification hearing.  See United States v. McCray, 672 F. App'x 593, 594 (7th Cir. 2016) (unpublished); see also United States v. Knauss, 170 F. App'x 772, 773 (2d Cir. 2006) (unpublished); Wright, 2019 WL 3219335, at *3; United States v. Rockot, No. 97–33, 2014 WL 558781, at *3 (W.D. Pa. Feb. 13, 2014).  The Sixth Circuit has not addressed the issue, but several circuit and district courts have concluded that proof that a defendant signed a written waiver which clearly informed the defendant of his right to a modification hearing and counsel is sufficient to demonstrate that a waiver was both knowing and voluntary.  See, e.g., McCray, 672 F. App'x at 594 (finding that defendant's right to a modification hearing was knowingly and voluntarily waived because the "Probation Form 49 in the record clearly shows that McCray waived his right to counsel and hearing, and that he agreed to the modification"); Rockot, 2014 WL 558781, at *3 (finding that a waiver form which "expressly advis[ed] defendant that he had a right to a modification hearing with the assistance of counsel" and indicated that "he understood that he was waiving those rights, along with defendant's signature on that waiver form, [were] sufficient to establish that defendant knowingly and voluntarily waived those rights").

Defendant may, however, rebut the Government's *prima facie* showing of waiver.  Proof of a signed waiver form is sufficient unless the defendant can provide some credible evidence, other than a mere denial, demonstrating that the defendant's signed and executed written waiver was not knowing and voluntary.  See Knauss, 170 F. App'x at 773 ("[T]he waiver agreement itself recites the rights Knauss waived and the more onerous conditions to which he subjected himself, indicating in the *absence of contrary evidence* that Knauss understood his rights and the action that would be taken against him." (emphasis added)); see also Rockot, 2014 WL 558781,

at \*3 ("Defendant does not allege that he was coerced into signing the document and there is no evidence that he did not understand the rights that he was waiving or that the language used in the waiver was unclear or ambiguous.").  Once a signed waiver form has been produced, the burden of production shifts to defendant to rebut the Government's *prima facie* showing of waiver.[3]  See Knauss, 170 F. App'x at 773; see also Poindexter, 444 F. App'x at 583 (noting that defendant's argument failed because he "never claimed the language was unclear or ambiguous in any way").  If such evidence is produced, the Government, who at all times bears the burden of proving waiver, must put forth evidence demonstrating that the waiver was knowingly and intelligently made.  See Gilmore, 2009 WL 7063098, at \*4.  The Court may in some cases be required to hold an evidentiary hearing on the issue.  See United States v. Poe, 220 F. App'x 446, 449 (8th Cir. 2007) (reversing district court on issue of "disputed executed waiver" and remanding for further fact finding).

Defendant does not dispute that he signed and executed a written waiver of his right to a modification hearing and counsel.  (ECF No. 233 at PageID 855; see also March 20, 2019 "Waiver of Hearing to Modify Conditions of Probation/Supervised Release," ECF No. 209-1.)  The waiver clearly indicates that Defendant was advised of his right to "a hearing and assistance of counsel before any unfavorable change may be made" to the terms of his supervised release, and that he "voluntarily waiv[ed] [his] statutory right to a hearing and assistance of counsel."  (ECF No. 209-1 at PageID 675.)  The Government, therefore, has made a *prima facie* showing of waiver.

---

[3] Although this burden-shifting framework would ordinarily not be applicable in the criminal context, supervised release proceedings are not criminal proceedings.  Rule 32.1(c) waivers are not evaluated under the stringent standard imposed for demonstrating knowing and voluntary waivers of rights in criminal proceedings.  See Williams, 321 F. App'x at 489–90.

Challenging the validity of the waiver, Defendant argues that his improperly treated schizophrenia prevented him from "fully understand[ing] his obligations pertaining to the registry and its collateral consequences."  (ECF No. 233 at PageID 872.)  Generally, evidence of mental illness, or untreated mental illness, without more, does not suffice to demonstrate that a waiver of one's rights was involuntary.  See United States v. Newman, 889 F.2d 88, 94 (6th Cir. 1989) ("Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process . . . ."); see also Gilmore, 2009 WL 7063098, at *4 ("Although the Defendant claims to have been incapable of making a knowing and intelligent waiver because of untreated medical conditions, these supposed conditions alone do not render his confession involuntary[.]").  The Supreme Court in Colorado v. Connelly, 107 S. Ct. 515 (1986), addressed whether a defendant suffering from chronic schizophrenia could voluntarily waive his constitutional rights.  The Court in Connelly held that a defendant's mental condition alone does not justify a finding that an action was not voluntary.  Id. at 520.  "[M]ere examination of the confessant's state of mind can never conclude the due process inquiry."  Id. at 520–21.  Connelly applied this holding to find that an unprompted confession by a mentally ill individual who had been diagnosed with chronic schizophrenia and who was "in a psychotic state" at the time of the confession was not involuntary, even when he mentioned that he had heard "the voice of God."  Id. at 518–20.  The key to a finding of involuntariness is evidence of coercion of some kind by either police officers or the authorities.  See id. at 164 (mental state "by itself and apart from its relation to official coercion" does not render a statement involuntary).

14

In some instances, however, a defendant's untreated schizophrenia can support a finding that a waiver was not knowing and intelligent, even if voluntary.  See United States v. Betters, 229 F. Supp. 2d 1103, 1106 (D. Or. 2002) (finding that a woman who had schizophrenia who was "highly intoxicated from alcohol, possibly under the influence of another drug, off psychotropic medications, and likely in a manic state" could not have knowingly and intelligently waived her rights).  Additionally, evidence of serious mental deficiencies at the time of a waiver of one's rights can support the finding that a defendant did not knowingly or voluntarily waive his rights.  See United States v. Robles–Ramirez, 93 F. Supp. 2d 762, 766 (W.D. Tex. 2000) (finding Miranda waiver not to be knowingly made when the defendant who had an IQ of between 66 and 72, who could not speak English, who could not read or write, who did not understand letters of the alphabet, and who functioned at the literacy of a preschooler, and who suffered from a neurological impairment); see also United States v. Aikens, 13 F. Supp. 2d 28, 34 (D.D.C. 1998) (individual with mental impairment could not read or write and therefore could not comprehend her issued Miranda Warnings).

Although, as stated supra, the Government provided the Court with a written waiver signed and executed by Defendant on March 20, 2019, and thus established a *prima facie* showing of waiver (see ECF No. 209-1), Defendant has provided credible evidence demonstrating that he may not have knowingly and intelligently waived his rights.  Because Defendant has a demonstrated history of schizophrenia, depression, bipolar disorder, and attention deficit hyperactivity disorder (see 2015 Presentence Report, "Mental and Emotional Health," ¶¶ 86–92), the Court determines that an evidentiary hearing is necessary in this case to determine whether the waiver signed and executed by Defendant was, in fact, knowingly and intelligently made.

15

**III.    CONCLUSION**

For the reasons set forth above, Defendant's Motion to Modify the Terms of his

Supervised Release is **DENIED** for lack of jurisdiction.  The Court reserves ruling on the Motion

to Dismiss.  The Parties shall appear for a Video Hearing on the issue of waiver at a date and

time to be determined by the Court.

**SO ORDERED**, this 12th day of June, 2020.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

16